The first case on the docket today is number 127-547, Rita Lintzeris, number 13 on our agenda. Counsel for the attorney, are you ready to proceed? Please identify yourself for the record. Please, the court, good morning, your honors. My name is Charles Morrissey, together with my colleagues Renee Tirado and Caitlin Frye. I represent the appellants and plaintiffs below, Rita Lintzeris, Zoran Josel, William Oreitis, and Clarence Daniels. This case is a matter of great public concern. The City of Chicago has been imposing penalties in conflict with section 11-208.7 of the Motor Vehicle Code. The best way to approach this case, as we try to do for the court in our briefs, is to begin at the beginning. We went back and we looked at all of the motor vehicle laws since the advent of the automobile. And you can see from this court, in 1909, they interpreted the first Uniform Motor Vehicle Act in Illinois. And they found that that uniform act, by virtue of needing to be uniform, meant that it didn't take the total subject matter out of the authority of local municipalities. It just prohibited them from passing laws that are inconsistent with, at that time, the entire Motor Vehicle Code. But today, it only relates to the rules of the road codified in Chapter 11. Chapter 11 of the Motor Vehicle Code contains an express limitation on home rule authority, section 11-208.2. That was passed in 1971, subsequent, right at the time that the Constitution of 1970 became effective. It was one of many specific limitations put in acts in Illinois. The passage of that statute didn't change anything. Everything remained the same. And if you look... I stopped right there at that statute. The language of 208-2, I assume that's what you're talking about, limits the authority of home rule units to adopt, quote, that are inconsistent with the state statute. What are police regulations? How do you define that? We view that as a reference to the police power of the local unit of government. So anything that... Police power, how do you define police power, and how is that different from regulations? What do you mean, police power? Well, the power of the local municipality to govern and exercise over its local matters. So it is a police regulation. It relates to all of matters arising out of the movement of vehicles that allow for arrest, or the statutes referenced in 208.7, for example, all of those require an exercise of police power, and those are police regulations that are permitting vehicles from... municipalities from enacting laws that would permit them to do something inconsistent. This chapter of this act is very specific to the rules of the road. And so it's our position that the reference to police regulations is a reference to the power that the legislature has granted them to pass laws not inconsistent, as it says in that express limitation, with Chapter 11 of the Motor Vehicle Code. That didn't change anything. This is how it's always been regulated. And if you look and you go through, as this court in the Palm v. 2800 Lakeshore Drive case did years ago, said this is how we do it. And analytically, it really makes sense. As a matter of time, maybe often the court, as it did in January in a decision, says all those arguments are great, maybe they're right, maybe they're wrong. We don't need to reach them because we're going to apply the express limitation. But here, if you look at the history of motor vehicle regulation in this state, they never had that power. That's not a matter of local concern. And so all the legislature was doing... It's local concern if you care about the health and welfare of the residents of the city, isn't it? I'm sorry, Justice Carter, I couldn't hear you. The health and welfare of the residents of the city and these traffic ordinances to protect that health and welfare. Well, the issue, and we find this in the court's jurisprudence, interpreting the legislative intent back to the first Uniform Motor Vehicle Act. It doesn't matter. When we teach the rules of the road to our children learning to drive, we want them to be the same. Wherever you go in this state, if we teach a significant portion like this, which is in the same chapter where our DUI laws are codified and all these things are codified, they need to be uniform and they need to be consistent. This isn't just a matter of, well, we want uniform DUI reports, we want uniform traffic tickets. People need to know. So how do we handle that then if we're going to have a different standard in different municipalities and allow them to do whatever they want? We can't tell someone, look, this is what you're going to be subjected to. And quite frankly, if the legislature wanted to permit that, they wouldn't have put this law where they did in Chapter 11, and specifically in Chapter 11 in the 208 point sections, which 208.1, 208.2, all of them relate to issues surrounding home rule authority. Of course the appellate court found that this ordinance was not inconsistent with 208.7, that it can be read in concert as a fee, an administrative fee. It isn't consistent because Chapter 11 of the Motor Vehicle Code does not allow penalties by any municipality unless expressly authorized herein. And that's found in 11-207, I believe. And I'll correct that in rebuttal if I'm wrong. But that express authorization language we cite all over our briefs, and there is no express authorization here. And from the text of 208.7, we can see there's a reference in 208.7C. And what it says is, the fees shall be in addition to Roman numeral I, any other penalties that may be assessed by a court of law for the underlying violations, and two, any towing and storage fees or both charged by the towing company. So when you tie this together and you look at the language there, well, if they were going to allow anyone other than a court of law to impose a penalty, the legislature would have added that here. The fees shall be in addition to any other penalties that may be assessed by a court of law for the underlying violations. I suppose they would have added, or by a home rule ordinance, you know, because they're referencing any other penalties, which is common language. There is no language saying that the home rule entity cannot assess penalties, correct? There is no direct. Specifically saying that. Correct. The circuit court, that was one of the circuit court's interpretations, that the legislature should have said only. I don't think in this instance. Wait, wait. Can you answer the question specifically that is asked? Is there anything in the legislation that expressly preempts home rule authority from adopting an ordinance to prescribe penalties on impoundment? Is there any, the question here is, is there any plain language in the statute that expressly preempts home rule authority to do that? Yes. Where? The express limitation, excuse me, the limitation on penalties unless expressly authorized that I referenced earlier. Those penalties. About the penalties upon impoundment of the car, is there any express language preempting home rule unit from adopting such penalties in terms of impoundment? I think that's the question. Well, I think it's covered within that broader. We're relying on that language that says that this shall be in addition to any penalties assessed by a court of law. That's your answer. That we're to interpret that to mean that the home rule entity cannot assess a penalty? I think it's demonstrative of the legislative intent and consistent with the entirety of Chapter 11, which does not permit any municipality from enacting any penalties unless they're expressly authorized. But here, obviously, we have the issues we've raised and how we construe the statute. You have two points, specific points made by the legislature and a specific reference to any other penalties. And as we kind of lay out in our brief, you know, this has the potential to be very disruptive in the criminal law arena. And I don't think there's any dispute that other than Class B misdemeanors is permitted under Chapter 11, that local authorities can enter into that area. Now, here they allow, and there's cases out there where they allow municipalities to either incorporate Chapter 11 into ordinances or pass their own ordinances, not inconsistent. And we see case law out there where municipalities have done things mostly less restrictive where they were allowed by the courts. So, for instance... Is the statute you're talking about 28-7? Which section are you talking about here? 208-7? Is that the statute you're talking about where the legislature has... The express authorization language? Where municipalities may adopt regulations in terms of fees? Is that what you're talking about? Which... Is that the statute you're talking about? I'm sorry, Chief Justice. I'm sorry, I'm sorry. We're trying to find what specific statutes in the code are you pointing to that you say are an express limitation on home rule powers in the area of imposing penalties upon impoundment of a vehicle? Where should we look? Let me come back to you on that language in specific sections. I should know it, but I have a lot stored in my head today. But there is that express authorization language in Chapter 11. No penalties unless expressly authorized. And, of course, all of these ordinances that involve the movement of vehicles are police regulations. They give the police authority to do things, to take things. And so that's where that is. Excuse me, Mr. Morrissey. The Chicago Code, Section 2-14-132A1, is that the same or akin to offenses identified in Section 11-208.7B of the Vehicle Code? And if so, then they were permitted under the code, not preempted. Is that right? Section, that was added in 2016, Justice Burke, and that section followed, and you can see this in the record, the city came here to Springfield and said, you know, we're having this issue with, and the legislative history is in there, we're having this issue with gang members disrupting funeral processions, and we want to add this to the list of offenses. And they did. But what I think the legislature did in that amendment, you know, they said we're not going to, we're going to let Home Rule units add whatever underlying laws they want. It's pretty broad. It covers any law covered by our Criminal Forfeiture Act, and the laws, you know, when you're thinking about what can be done with a motor vehicle, it's pretty broad. But at the end of the day, the express limitation or carve-out, Home Rule carve-out is further evidence in 2016 of the legislative intent. Because if our legislature didn't believe that Section 11-208.7, you know, didn't, wasn't a limitation at all on Home Rule authority when it was first passed in 2011, effective in 2012, why are they adding a Home Rule carve-out? And in that regard, I think it's very clear that the legislature intended, and there were some things where they gave, for instance, they empowered non-Home Rule municipalities to do certain, take certain actions administratively under 208.3 of the code. But ultimately, the decision regarding that limitation, the things in there are very specific. Here's what we're going to let you do. For instance, they carved out attorney's fees in the event they were unsuccessful at administrative hearings. Well, that makes sense. Maybe a larger municipality might have less resources, less ability to review these administrative matters before they go to hearing because there's more arrests in there. So the legislature has been very clear, consistent themselves throughout, and really since 1907 when the first motor vehicle, uniform motor vehicle law was passed, and subsequent to that. Your complaint requests relief for penalties that were assessed 2012 on, right? Yes. Okay. And that seems to be triggered by the passage of 11-208-7. Correct. That's the provision that you speak a great deal of in your briefs. Can you explain to us how does 11-208-7 fit into your argument of express preemption? Well, based on the express limitation and based on the fact that the statute on its face relates to the use and operation of motor vehicles, which means the movement of motor vehicles, it directly addresses the issue of impoundment of vehicles arising out of these criminal offenses. And it gives the authority to municipalities that they may impose fees in terms of impoundment, correct? Correct. And you suggest that that means that this is an express preemption of home rule authority. Is that right? It's an express limitation, yes, and that would preempt because it's discretionary. And we're looking at a penalty that's imposed here, not a fee. Is that correct? Correct. But when they address this, and that's a question, you know, for the city, which was their authority for this to begin with, given especially that they're adjudicated administratively, they incorporate 11-208.3, that procedure in the statute here. There's no express prohibition of what the city's doing, is there? Express? I think it is express. When they say no penalties shall be assessed unless expressly authorized to your end, and they've now taken the subject matter and they've put it in Chapter 11, that's express. That's express. And the language of the statute demonstrates that. So it's discretionary. So the legislature's saying they, so you don't have to do this. You don't have to impound vehicles that are used in criminal offenses. You don't have to. But if you do, you need to follow what we're doing here. And remember, we drill down on what the legislature did. And you can see this in some, not from this court, but in some underlying decisions from our appellate court. The decision to move forward with 208.7 where it is in the Motor Vehicle Act, I think is an express limitation. And these decisions I'm talking about below, when you're talking about this fee remedy, there they are. These are municipalities going into courts saying, look at this offense that arose out of this DUI or this drug offense. We spent all this money and resources. We want that in restitution. Can I just so that I understand your argument that 208-7 speaks about municipalities? I'm not sure I understand your argument. Are you saying that that section applies to non-home rule units or that it also applies to home rule units? What is your argument? It applies to all county, any county or municipality. So just if I could finish my question here, my own question. Would you say it's ambiguous? Should we look to the legislative history to determine whether this language municipality means home rule or non-home rule? I don't think it's ambiguous in the context of the entire statutory scheme, which the court considers when you consider 11208.2, 11207, and these other sections that clearly prohibit penalties for matters covered by Chapter 11 of the Vehicle Code, the Rules of the Road, unless expressly authorized. Thank you very much. Counsel for the appellate. Your time is expired. Thank you. Thank you. May it please the Court. The city charges administrative penalties to deter certain serious vehicle offenses that result in impoundment. The city's authority to charge these penalties is not preempted because the General Assembly has not prohibited them. Moreover, the separate question of whether vehicle regulation pertains to the city's government and affairs is not properly before this court because plaintiffs fail to raise it in either of the courts below or in their petition for leave to appeal. Finally, with respect to the double jeopardy issue that plaintiffs have raised in this court, unless the court has any questions, we'll rest on our brief. But first I'd like to start with the question of statutory preemption. Simply put, the city's authority to charge administrative penalties associated with impoundment is not preempted because nothing in the Vehicle Code prohibits them. Plaintiffs, for their part, principally rely on a provision of the Code, Section 2082, which generally preempts local ordinances that are inconsistent with the provisions of Chapter 11 of the Code. And in an attempt to show an inconsistency, plaintiffs rely on Section 2087, which is a grant of authority to local governments to charge administrative fees associated with impoundment. But critically, Section 2087 does not mention administrative penalties, let alone prohibit them, or say that only administrative fees may be charged. Now, I believe I heard Mr. Morrissey represent that there's a provision of the Code that says that municipalities may not charge administrative penalties unless authorized, and that's not the case. There is a provision, Section 207, which prohibits local laws that are in conflict with the provisions of this chapter, namely Chapter 11, unless expressly authorized. That provision, though, does not come into play here because the city's imposition of administrative penalties is not in conflict with Section 2087. So the city doesn't need authorization under Section 207 to charge these penalties. Do you agree that if 208.7 is inconsistent, that then 208.2 would apply and it would be preempted? No, Your Honor. This actually brings me to our second argument with respect to statutory preemption. Another separate reason why the city's authority is not preempted here, which is that Section 2087 does not limit home rule authority in the first instance. So in the event of an inconsistency, it still would not preempt what the city is doing. Well, I mean, again, 208.2 seems pretty inclusive. It's basically everything in this chapter is a limitation of home rule authority for inconsistent ordinances relating to police regulations, except for certain sections that are listed. And this is not 208.7 is not one. That's correct, Your Honor. But it's our position that the General Assembly does not comply with the specificity requirement for preemption that's in the Constitution, Section 6i. When it enacts a general preemption provision, such as Section 208.2, which references Chapter 11 of the Code, at a time when Chapter 11 of the Code didn't contain any regulation of impoundments. I know that. But, I mean, come on. The legislature knows that 208.2 is there. I mean, you're going to assume the legislature is unaware of 208.2 when it enacts 208.7? No, certainly not. But I do want to point to a couple other points. And also add this to your tier list. Why is there a law now, House Bill 2656, that proposes adding 208.7 to the list of exemptions of 208.2? And that's never been acted upon. I'm sorry. I was not aware of that proposal, Your Honor. So I'm afraid I can't speak to that. But I do want to highlight another provision of Chapter 11, Section 208.6, which is a statute governing red light cameras. Counsel, before you do that, is it your position that 208.7 does not apply to home units? Yes. And why is that? A few reasons. One is that 208.7 does not have expressed preemption language in that statute itself. And so for that reason, the statute doesn't comply with Section 7 of the Statute on Statutes, which requires that any enactment purporting to limit home rule authority include such expressed preemption language. Additionally, when the General Assembly enacted Section 208.7, it did not comply with the Home Rule Note Act, which requires that any enactment purporting to limit home rule authority include an explanatory note, which explains the enactment's impact on home rule units. And the General Assembly did not include any such note when it enacted Section 208.7. So in light of these omissions, it's our position that 208.7 is best understood as applying to non-home rule units by granting them the authority, which they otherwise wouldn't have, to charge administrative fees associated with impoundment. But to be clear, these are separate and independent grounds that we're putting forward for why the VOCA code does not preempt the city's authority, even if the city still prevails because the city's imposition of administrative penalties is not inconsistent with any provision of Chapter 11. You're saying it's not inconsistent with 208.7, the expressive prevention language? Exactly, yes. They talk about reasonable administrative fees related to the administrative and processing costs. That's correct. And this penalty that fluctuates based upon the offense is a reasonable fee that's No, Your Honor. I want to be clear. The city's penalties are not fees of any kind. Right. They're penalties. Yes, they're penalties. And they're legally under the police powers of the city. Yes, that's right. Yeah. So the fact that Section 208.7 references only administrative fees, that cannot be understood as any kind of prohibition of administrative penalties or any kind of regulation of such penalties. And so based on the fact that Section 208.7 just doesn't reference administrative penalties either way, plaintiffs cannot show an inconsistency between what the city is doing and the statute. Now I'd like to address the argument that plaintiffs have raised in this court for the first time, that the overregulation does not pertain to the city's government and affairs. This court should not consider this issue because plaintiffs failed to raise it in the circuit court or in the appellate court or in their petition for leave to appeal. Rather, plaintiffs proceeded under an entirely different argument, namely what we've been discussing, that Section 208.7 preempts the city's authority to charge administrative penalties associated with impoundment. Now that argument, the plaintiffs did make, necessarily proceeded from the premise that vehicle regulation does in fact pertain to local government and affairs. So plaintiffs have tried to take this case in an entirely different direction in this court, but this court should hold that that argument has been forfeited. But if the court does consider the merits of the issue, vehicle regulation plainly does pertain to local government and affairs. Section 6A of the Constitution expressly provides that home rule authority includes the power to regulate for the protection of public health, safety, and welfare. And here the city's administrative penalties associated with impoundment do just that by providing deterrence against vehicle offenses that would otherwise put at risk the health, safety, and welfare of Chicago residents. Moreover, the city's impoundment ordinance is just a small piece in the long history of local vehicle regulation in this state, dating back at least to 1911. So plaintiffs' proposition that local governments have no role in vehicle regulation is totally unfounded. And unless the Court has any further questions, we ask that the judgment of the appellate court be affirmed. Thank you very much. Counsel? Counsel, can you address the last issue first? Has this argument that you spent, I think, seven pages of your brief, has that been discussed before in the PLA? The pertains to argument? Pardon? I'm sorry. The argument about the, what's the precise language? The governmental, I lost the language. Government affairs. Does this pertain to Chicago's government and affairs? Well, that arises. So in the circuit court, they moved to dismiss, claiming that they were entitled to exercise their broad home rule powers under the Constitution of 1970. And we responded to that simply by saying they can't prevail with such an overarching statement, and they provided no basis or no analysis, home rule analysis themselves, other than here's our home rule powers, they're very broad. Any litigation, any rulings by the court, any argument on the specific issue of whether or not this ordinance pertains to Chicago's government and affairs? I don't, I can't say there was a specific ruling on that. Although, you know, we did raise other issues, but the court granted the motion based on their home rule power. The court did, on appeal, was there any litigation, any argument, any briefing on this issue? We cited the Palm decision, as we cited in our PLA, and again, we have the same issue in the courts below, which is, you know, it's not, we find that it's consistent, which we disagree with, of course, as part of their broad home rule powers, and you can't do this. Well, that's not what the Palm decision says, and that's in our PLA, which is the analysis, and again, in our briefs in the first district, you know, we thought that on the motion to dismiss it, it wasn't our burden to come forward and say this is the test, so we said they haven't demonstrated that this was granted to them by the Constitution of 1970 when it was enacted, and it doesn't pertain to. So we went through an extra layer of analysis here of those, and some of those factors were considered. So we were talking about the interest, what the state's interest in this matter is, and they were claiming the same thing. Well, the state has a paramount interest, according to the United States Supreme Court, and we cite that in our briefs, of enforcing the rules of the road. The penalty authorization administratively, unless expressly authorized, isn't 207, but it doesn't reference the penalties, but there are limitations on penalties found in Section 208.3, which provides the authority for them to proceed administratively. So in that regard, I don't think – I think that is expressed when you consider the statute as a whole. I want to address counsel's remarks about 208.6. As I mentioned earlier, these 208 point sections all relate, starting at 208.1, which is a uniformity provision, a specific reference to home rule that requires uniformity, and that means it needs to be the same in all these districts, in every local unit of government. There is a presumption that the legislature acts with knowledge of all prior enactments. And the suggestion – well, they granted in 208.6, they granted – and this gets back to why it's pertinent – not necessarily we need to win based on the pertains to argument, but they granted home rule units the right to engage in the activity in that statute. Now, if you look at 208.2, you'll see that there is a limitation there.  It's that there is no limitation. So then when they have another provision below and they're taking that power back, they included an express limitation there. But just imagine, how would that – 208.2 becomes superfluous, right? So the question is, why would we have this limitation of the statute? Well, that wouldn't make sense. Why would we have this specific limitation? The city of Chicago v. Roman, again, in your decision earlier this year, the courts many times found these express limitations on home rule authority to apply to the entire chapter. And they don't need to restate it again. And this subject matter is our position was already off the table. It never came back. What 208.2 really is, is a grant to home rule units. They're allowing them to continue to follow this Court's standard passed in Ayers in 1909, the first time it looked at the issue. And then codified, actually, in 1911, amendment to the Motor Vehicle Act codified this Court's rule in Ayers that local municipalities cannot pass inconsistent laws based on the fact that it was a uniform vehicle code. And that's really where it comes from. Section 207 existed before the Constitution. The Constitution of 1970 became effective for many years. We cite that in our brief. So the subject matter was off the table. They don't need to one, it was passed in 1971, and the statute on statute only applies to laws passed after January of 1977. So I don't think that's an issue. In the Home Rule Note Act, this is these rights were already gone. They're granting rights here is our position to all units of government, and they need to be enforced consistently. And certainly fees and penalties are legally inconsistent. And the statute relates to costs, which gets back to the point I was making earlier, which is, you know, it's a derogation of common law with respect to the remedy they're creating. We have decisions from appellate courts below that say these municipalities cannot recoup in restitution in the DUI cases or criminal cases, amounts spent on their police officers, amounts spent internally dealing with inventory and evidence. These sorts of things cost money and resources, and they can't recover those in restitution. So what do they do? They say, here, we're going to give them a remedy, and we're going to make sure that this is going to recognize this is going on some places already. We want to make sure this is done, so we're going to put it right here in Chapter 11 in this section so that it's consistent throughout the state. And penalties and fees are legally inconsistent. The fact that we cite Justice – the late Justice Freeman's decision in People v. Jones in 2006, penalties and fees on their face are legally inconsistent. So if the legislature – and it goes back to that one provision of the statute, and there's other indications based on the text that we cite in our brief. I'm not going to go through every one, but that's a very strong indication there. They're specifically talking about any other penalties. Any other penalties, and the justices know this from their experience, that's language typically used by the legislature with respect to criminal sentencing laws. And there's no question that the criminal laws, other than class B misdemeanors, granted by Chapter 11 of the Motor Vehicle Code, are off the table for these homeowner municipalities. So I don't think we weighed the argument. We've made it consistent the whole way. What we did is we expanded on it. And there's other comments, cases cited in there that say when we get into these constitutional issues, there really can't be a waiver. The court wants to get it right. That's what they're asking on this technical grounds, do it. From the very beginning in our response to the motion to dismiss, we decided the city hasn't explained how they have home rule authority. They haven't conducted that analysis, and it wasn't our job to prove a negative when they have the burden as to move in on that motion. So unless the court has further questions for me, I would ask that the court reverse the courts below and properly enforce the legislation's mandate and the rules, protect the rules of the road in this very important area that relates to criminal laws and specifically including DUI enforcement. This is not an area based on the decisions we cite in our briefs that we want to be fast and loose with. There are arguments. You mentioned the double jeopardy argument. We don't argue here today that we're right because of the double jeopardy argument. That is an indication to us of the legislative intent. And you look at those decisions. We cite one of the people versus Judd-Odd. And this is in 1999. The city of Chicago was only traded $500, and that double jeopardy argument was made. And what happened? And the court said, well, it says it's a penalty, but there's always problems with labeling penalties and fees. Counsel, your time has expired. Oh, I'm sorry. Thank you. And may I conclude that briefly? No. Okay. Very good. Thank you. Thank you very much, both sides. This case, No. 127-547, Zeres v. The City of Chicago, Agenda No. 13, will be taken under advisement.